UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

KAYSON PEARSON,

                                    Petitioner,

          -against-

DAVID ROCK,
Superintendent, Upstate Correctional Facility,

                                  Respondent.

**MEMORANDUM & ORDER**

**12-CV-3505 (NGG) (LB)**

-------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Kayson Pearson ("Pearson" or "Petitioner") brings this pro se Petition for Writ

of Habeas Corpus pursuant to 28 U.S.C. § 2254, attacking his 2006 state convictions for murder,

kidnapping, rape, and sodomy. (Pet. (Dkt. 1).) He asserts three claims: (1) he was denied the

right to counsel at a critical stage of his criminal proceedings; (2) his conviction violated the

Double Jeopardy Clause; and (3) he was denied the effective assistance of appellate counsel. For

the reasons set forth below, Pearson's Petition (Dkt. 1) is DENIED. Pearson's motions to stay

(Dkt. 29) and to further amend his Petition (Dkt. 35) are also DENIED.

## I.    BACKGROUND

###     A.    Facts[1]

On April 20, 2003, Pearson and Troy Hendrix ("Hendrix") told Romando Jack ("Jack")

that they had recently "beat up a girl." (Def. Appellate Br. (Resp't's Ex. B) (Dkt. 13-2)

at 18-19.) Pearson and Hendrix led Jack to Hendrix's basement, where Hendrix saw twenty-one-

year-old Ramona Moore ("Moore") restrained with chains. (Id. at 19.) Moore then informed

---

[1] The following facts are largely drawn from Petitioner's description of the evidence the prosecution presented
during his second trial (the trial of conviction) as set forth in the brief he filed with the Appellate Division on direct
appeal. (See Def. Appellate Br. (Resp't's Ex. B) (Dkt. 13-2) at 4-28.)

Jack that either Pearson or Hendrix had forcefully abducted her from the street, and that both Pearson and Hendrix had sexually assaulted her and beat her when she tried to escape. (Id.) Jack later informed his fiancée's uncle about what he had seen at Hendrix's apartment (id.); eventually, the uncle called the police. (Id. at 20.)

On April 28, 2003, Pearson approached fifteen-year-old Shaneiqua Boyd ("Boyd") on the street and invited her to Hendrix's apartment, where the two men raped and sodomized her. (Id. at 19-20; Trial Tr. at 751.)[2] Eventually, Boyd attempted to escape, but Pearson prevented her from doing so. (Def. Appellate Br. at 20.) Hendrix's aunt, Adrianne Wallace ("Wallace"), entered the basement during Boyd's escape attempt. (Id.) Wallace convinced the two men to allow Boyd to leave. (Trial Tr. at 797-800.) Boyd informed Wallace that Pearson and Hendrix had raped her. (Id. at 801.) Wallace then called a cab for Boyd and asked Boyd to come by the house the following day so they could discuss what had happened. (Id. at 801-02.)

When Boyd returned home at approximately 3:00 a.m., she told her grandmother what had happened to her. (Def. Appellate Br. at 20.) Her grandmother then alerted the police. (Id.) Boyd identified Hendrix's apartment as the location where she had been kept. (Id. at 21.) Subsequently, she identified Hendrix as one of her attackers at a line-up. (Id.) Boyd was unable to identify Pearson from a photo array. (Id.)

Moore's uncle received an anonymous phone call indicating the location of Moore's body. (Trial Tr. at 302.) On May 10, 2003, the police found Moore's body near Hendrix's apartment. (Def. Appellate Br. at 21.)

A search of Hendrix's apartment was conducted on April 29, 2003, and the police found items that Boyd had described to the police. (Id. at 20-21.) During a second search, conducted

---

[2] Citations to the Trial Transcript refer to the consecutively-paginated transcript of Pearson's second trial. It is filed at Dkts. 12-2 (starting at ECF page 597) through 12-5 and Dkt. 13-1.

on May 13, 2003, the police found a dumbbell bar, two saws, a chisel, and a hammer, all of which were covered in Moore's blood. (Id. at 22.) Pearson was arrested on May 21, 2003. (Id.)

## B.  Trial Court Proceedings

### 1.  The First Trial

Pearson and Hendrix were charged in a single indictment in New York Supreme Court, Kings County, with two counts of first-degree murder, two counts of first-degree kidnapping, two counts of first-degree rape, and two counts of first-degree sodomy. (Aff. of Ruth E. Ross in Opp'n to Pet. for Writ of Habeas Corpus ("First Ross Aff.") (Dkt. 12) ¶ 6; see also Apr. 11, 2006, Sentencing Hr'g Tr. (Dkt. 13-1) at 10.) After various pretrial proceedings, including a suppression hearing (see generally Jan. 5-10, 2006, Hr'g Tr. (Resp't's Ex. A) (Dkt. 12-1) at 25-526), the trial began on January 19, 2006. Pearson and Hendrix were tried simultaneously, but with separate juries. (See id. at 515-19; Jan. 23, 2006, Hr'g (Mistrial) Tr. (Resp't's Ex. A) (Dkt. 12-1) at 242.)

At the close of the first day of trial, Pearson and Hendrix attempted to escape from custody using homemade weapon (plastic knives). (See Feb. 6, 2006, Hr'g (T2B) Tr. (Resp't's Ex. A) (Dkt. 12-1) at 3.) As the jury was exiting the courtroom, Hendrix leapt onto the defendants' table and then towards the bench, and Pearson attacked his attorney, Mitchell Dinnerstein ("Dinnerstein"), with his weapon. (Id. at 3-4; Tr. of Testimony of Judge Tomei ("J. Tomei Tr.") (Resp't's Ex. H) (Dkt. 13-3) at 747-48.) Dinnerstein bled "profusely" from his left cheek. (Feb. 6, 2006, Hr'g (T2B) Tr. at 4.) A court officer blocked Hendrix's path, Hendrix unsuccessfully tried to grab the officer's gun, and they dropped to the ground and fought. (J. Tomei Tr. at 748.) During the escape attempt, some of the jurors found themselves unable to leave the courtroom, and even screamed in panic. (See Feb. 6, 2006, Hr'g (T2B) Tr. at 3-4.)

3

The courtroom soon filled with police and court officers; it took approximately twenty minutes to control the situation. (J. Tomei Tr. at 749; see Feb. 6, 2006, Hr'g (T2B) Tr. at 4.)

On January 23, 2006, Dinnerstein and Gary Alexion ("Alexion"), one of Hendrix's attorneys, moved to be relieved as counsel. (Jan. 23, 2006, Hr'g (Mistrial) Tr. at 230.) Alexion also moved for a mistrial. (Id. at 230-31.) The prosecution opposed the motion, arguing that the defendants must not be allowed to benefit from their own misconduct. (Id. at 232-36.) Dinnerstein argued neither in favor of nor in opposition to Alexion's motion for a mistrial.

The court granted the mistrial, concluding that the jury had been incurably tainted by witnessing the escape attempt and the concomitant publicity that followed. (Id. at 236.) The court also granted Dinnerstein's and Alexion's motions to be relieved, and assigned attorney John Stella ("Stella") to succeed Dinnerstein as Pearson's counsel. (Id. at 237-38, 241.) After Stella accepted representation of Pearson, the court called in the jury and excused the jurors. (Id. at 242-43.) That concluded the first trial. (See id. at 243.)

    2.   The Second Trial

After new juries were selected and sworn, opening statements for Pearson's second trial began on February 22, 2006. (See Trial Tr. at 28-75.) The trial court concluded that Pearson and Hendrix had forfeited their right to be present at trial, and ordered that they instead appear via video feed. (See Feb. 6, 2006, Hr'g (T2A) Tr. (Resp't's Ex. A) (Dkt. 12-1) at 5.) At the second trial, Jack testified to seeing Moore physically wounded and restrained in Hendrix's basement. (Id. at 441-46, 451-59, 465-67.) Jack also testified that Moore told him that Hendrix had dragged her into the basement and, along with Pearson, beat and raped her. (Id. at 455.) Boyd described in detail her kidnapping and multiple rapes (id. at 739-66, 776), and identified Hendrix and Pearson as her attackers (id. at 1076-77). Boyd noted that she had been restrained to a chair

by duct tape. (Id. at 754.) She also testified that Pearson told her that there was a dead body in the basement (id. at 776-77), and that Hendrix and Pearson told her that they had killed a girl "the night before" (id. at 741).

Detective Wayne Carey, who questioned Pearson soon after his arrest, read into evidence Pearson's written statement in which Pearson confessed to raping and killing Moore, and to raping Boyd. (Id. at 1662-63, 1667-68.) Dr. Sandra Scott, who examined Boyd a few hours after Boyd escaped, testified as to the numerous physical injuries Boyd had suffered the night of the attack. (Id. at 1103-44.) The prosecution introduced DNA evidence that Pearson's blood was found on Boyd's clothes (id. at 1583-84), and Moore's blood was found on several items recovered from Hendrix's basement (id. at 1584-85). The prosecution also presented evidence that Pearson's fingerprints were found on duct tape recovered from Hendrix's basement. (Id. at 1977-78.) Pearson called a fingerprint expert who opined that the fingerprints found on the duct tape did not belong to Pearson. (Id. at 2056-57.) Pearson testified in his own defense (in person, not via video feed) (id. at 2068), and he maintained his innocence, claiming that his confession to Detective Carey had been coerced. (Id. at 2078-89, 2117-20.)

Based on, in part, the foregoing evidence,[3] the jury convicted Pearson on all counts on March 23, 2006. (Id. at 2569-73.) On April 11, 2006, the court sentenced Pearson to two concurrent terms of life imprisonment without parole for the first-degree murder convictions. (Apr. 11, 2006, Sentencing Hr'g Tr. (Resp't's Ex. A) (Dkt. 13-1) at 10.) Pearson was also sentenced to twenty-five years of imprisonment for each of the kidnapping, rape, and sodomy charges relating to Moore, also to run concurrently. (Id.) Finally, Pearson was sentenced to

---

[3] In addition to the evidence described above, the prosecution called as witnesses the police officers who executed the two search warrants (Trial Tr. at 156-267, 650-716), and the Emergency Medical Technician who initially treated Boyd (id. at 143-55), among others.

twenty-five years of imprisonment for each of the kidnapping, rape, and sodomy charges relating to Boyd, to run concurrently to each other and consecutively to all other counts. (Id.)

## C.    Direct Appeal

In February 2010, Petitioner perfected an appeal of his judgment of conviction to the New York Supreme Court Appellate Division, Second Department. (See generally Def. Appellate Br.) Through his appellate counsel, Harold V. Ferguson, Jr. ("Ferguson"), Petitioner argued that the trial court erred when it: (1) granted the mistrial, because there was no manifest necessity to do so and Pearson did not consent, thereby placing Pearson in double jeopardy for the same offense (id. at 29-37); (2) did not recuse itself from Pearson's second trial (id. at 37-42); (3) did not allow Pearson to proceed pro se at his second trial (id. 42-46); (4) allowed the second trial to proceed while the audio/video feed to Pearson was not working properly (id. at 47-50); and (5) denied Pearson access to the outtakes from a documentary about Pearson's case (id. at 51-56).

On November 16, 2010, the Appellate Division affirmed Petitioner's conviction. People v. Pearson, 911 N.Y.S.2d 432 (App. Div. 2010). As to Pearson's first grounds of appeal, the court held that Pearson had impliedly consented to the mistrial, or alternatively, that there was manifest necessity for the mistrial such that a mistrial would have been proper over Pearson's objection. Id. at 433. The court further held that Pearson's second argument was not properly preserved, or alternatively, that it was without merit. Id. The court also found that by virtue of his attack on Dinnerstein, Pearson had "forfeited the right to be present and to represent himself at his second trial." Id. The court finally dismissed Pearson's remaining grounds of appeal summarily as "either without merit or not properly before [the] Court." Id.

Pearson raised two issues in his application for leave to appeal to the New York Court of Appeals: (1) the trial court erred in declaring a mistrial, as there was neither manifest necessity nor consent from Pearson (Def. Appl. for Leave (Resp't's Ex. D) (Dkt. 13-2) at 1-2); and (2) the trial court violated Pearson's right to be present at his second trial (id. at 2-4). The Court of Appeals denied leave to appeal. People v. Pearson, 952 N.E.2d 1102 (N.Y. 2011).

### D.     Petition for State Writ of Error Coram Nobis

On May 30, 2012, Pearson filed a pro se petition for a state writ of error coram nobis in the New York Supreme Court Appellate Division, Second Department. (Pet. for Writ of Error Coram Nobis ("Pet. for Coram Nobis") (Resp't's Ex. F) (Dkt. 13-2).) Pearson raised two arguments: (1) he was denied the effective assistance of appellate counsel; and (2) he was denied the right to counsel at a critical stage of trial, specifically, during the mistrial proceeding.[4] (See Mem. of Law in Supp. of Pet. for Coram Nobis (Resp't's Ex. F.) (Dkt. 13-2) at 15-20.) Pearson argued that he was denied the effective assistance of appellate counsel because appellate counsel had failed to raise, on direct appeal, that Pearson was unrepresented during the mistrial proceeding. (Id. at 12.) Pearson further contended that he was denied effective assistance because appellate counsel failed to obtain a copy of the trial transcript from January 19, 2006, the day that Pearson attacked Dinnerstein. (See Aff. of Kayson Pearson in Supp. of Pet. for Coram Nobis (Resp't's Ex. F) (Dkt. 13-2) ¶ 18.) The Appellate Division denied Pearson's application on November 28, 2012, holding that Pearson had "failed to establish that he was denied the effective assistance of appellate counsel." People v. Pearson, 954 N.Y.S.2d 465

---

[4] Respondent construes Pearson's Petition for Coram Nobis as raising only the first argument, namely that Pearson was denied the effective assistance of appellate counsel. (See First Ross Aff. ¶ 15.) This is likely because, as explained below, see infra Part III.A.1, a claim of denial of the right to counsel at a critical stage of trial cannot be brought in a New York State petition for writ of error coram nobis.

(App. Div. 2012) (mem.). The New York Court of Appeals denied leave to appeal on March 11, 2013. People v. Pearson, 988 N.E.2d 536 (N.Y. 2013).

### E.     Petition for Writ of Habeas Corpus

On July 2, 2012, Pearson filed the instant Petition, asserting two claims: (1) he was denied the right to counsel at a critical stage of the proceeding (Pet'r's Mem. of Law in Supp. of Pet. ("Pet'r's Mem.") (Dkt. 1) at 2-9; Pet. at 5); and (2) his conviction was obtained by placing him in double jeopardy (Pet. at 5). On August 5, 2013, with the court's leave and consent of Respondent, Pearson filed an Amended Petition for Writ of Habeas Corpus, in which he asserts (3) that he was denied the assistance of effective appellate counsel. (Am. Pet. (Dkt. 22) at 1-7.)

## II.     HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A.     Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the

legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191

(2d Cir. 1982) (en banc) (internal quotation marks and citation omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order

for a claim to be 'fairly presented.'" Allison v Khahaifa, No. 10-CV-3453 (KAM), 2011

WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278

(1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state

court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278).

"This means, in essence, that in state court the nature or presentation of the claim must have been

likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a

petitioner does not cite any federal constitutional provisions, he may fairly present his federal

claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, every claim that a petitioner makes in his § 2254 application must first have

been raised in state court in order for the petition to be considered exhausted. This "total

exhaustion" rule requires that a "district court [ ] dismiss habeas petitions containing both

unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is

an important exception to the total exhaustion rule, created by a 1996 amendment to AEDPA,

whereby a district court may deny an entire habeas petition on the merits notwithstanding the

petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other

words, a court may deny but not grant "mixed petitions" on the merits. Caswell v. Racetti,

No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

### B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id.[5]

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks, citations, and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [their] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that a petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has

---

[5] A court may consider an otherwise procedurally barred claim on the merits if the petitioner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" resulting from the application of the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings" (internal quotation marks and citation omitted)). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim that has not been presented to the state courts can no longer be brought in state court, the federal district court may consider the petitioner's remaining claims on the merits so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23.

### C.    AEDPA Deference

Where a state court has adjudicated the merits of a claim asserted in a § 2254 habeas petition, the state court's merits decision is reviewed under the deferential standard set forth in AEDPA, which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's decision "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.  DISCUSSION

### A.  Claim One: Denial of Right to Counsel at a Critical Stage of the Proceeding

Pearson's first claim is that his Sixth Amendment right to counsel, made applicable to state criminal proceedings via the Fourteenth Amendment, was violated during the mistrial hearing. (Pet. at 2-9.) As discussed below, this claim was not properly exhausted in state court. However, as it is now procedurally defaulted, the court deems the claim procedurally barred

rather than unexhausted.[6] See O'Sullivan, 526 U.S. at 848. Accordingly, the claim is barred from review in Petitioner's federal habeas proceeding. Moreover, even if there were grounds to excuse Petitioner's procedural default, the claim would fail on the merits.[7]

1. Exhaustion

Petitioner did not raise on direct appeal his claim that he was denied the right to counsel during his mistrial hearing—either in his brief to the Appellate Division or in his application for leave to appeal to the New York Court of Appeals. (See generally Def. Appellate Br.; Def. Appl. for Leave.) Although Pearson briefly mentioned that he was without counsel in connection with his double jeopardy claim, he did not independently raise a claim of denial of the right to counsel. (See Def. Appellate Br. at 36; Def. Appl. for Leave at 2.) In fact, Petitioner expressly acknowledges that he did not raise this claim on his direct appeal. (Pet'r's Reply (Dkt. 15) at 1 ("Petitioner's claim of being denied counsel at a critical stage of trial was not raised on petitioner's direct appeal . . . ."); see also Am. Pet. at 2 ("Petitioner was denied his constitutional right to the effective assistance of appellate counsel, when appellate counsel did not independently raise a denial of counsel claim . . . .").) Accordingly, the claim was not exhausted on direct appeal.

Petitioner contends, however, that the claim is exhausted, because it was raised in his petition for a writ of error coram nobis. (See Pet'r's Reply at 1 ("Petitioner has cured this, by raising the claim on his state error coram nobis, which is now pending.").) This is incorrect. Petitioner did attempt to raise this claim in his coram nobis petition. (See Pet. for Coram Nobis at 15.) However, a writ of error coram nobis "has been authorized by New York courts only for

---

[6] As a result, the total exhaustion rule would not prevent the court from granting Pearson's Petition if it found that one of his other claims had merit, so long as they are both exhausted. See Turner, 262 F.3d at 122-23.

[7] For purposes of this analysis, the court assumes that Pearson's denial of counsel claim is cognizable in this proceeding, although it technically relates to a hearing during the course of his first trial, and his conviction occurred on the basis of the second trial, because of the claim's close connection to his double jeopardy claim.

claims of ineffective assistance of <u>appellate</u> counsel." <u>Jones v. Senkowski</u>, 42 F. App'x 485, 486-87 (2d Cir. 2002) (summary order) (emphasis added) (citing <u>People v. Bachert</u>, 509 N.E.2d 318, 319-20 (N.Y. 1987)). Indeed, in its opinion denying Pearson's coram nobis petition, the Appellate Division did not even mention this claim. <u>Pearson</u>, 954 N.Y.S.2d at 465. Because the denial of the right to trial counsel cannot be raised in a petition for writ of error coram nobis, Pearson did not "fairly present" the claim to the New York state courts. <u>Daye</u>, 696 F.2d at 191. His claim was therefore not exhausted by the petition for a writ of error coram nobis.

2.    <u>Procedural Default</u>

However, the court will treat the claim as exhausted because it is now procedurally barred. Failure to raise a claim on direct appeal in New York constitutes procedural default. <u>See Aparicio v. Artuz</u>, 269 F.3d 78, 90-93 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." (citing N.Y. Crim. Proc. Law § 440.10(2)(c))). The Second Circuit has found the New York rule to constitute an adequate and independent state ground. <u>See id.</u> at 93. Because Petitioner's claim is procedurally defaulted, this court can review it on the merits only if Petitioner demonstrates either: (1) cause for and prejudice resulting from the default, <u>see</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977); or (2) that he is actually innocent, <u>see</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 326-27 (1995); <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Petitioner contends that ineffective assistance of appellate counsel constituted cause for his procedural default.[8]  (Pet'r's Reply at 1 ("Petitioner's claim of being denied counsel at a critical stage of trial was not raised on Petitioner's direct appeal, due to appellate counsel's

---

[8]  Petitioner does not allege actual innocence. <u>Cf.</u> <u>supra</u> Part I.B (discussing prosecution's evidence at trial, including Boyd's testimony, Jack's testimony, Pearson's confession, and physical evidence linking Pearson to the crimes).

ineffectiveness.").) Two requirements must be satisfied for ineffective assistance of appellate counsel to be a sufficient cause of a procedural default: (1) ineffective assistance of appellate counsel must be an exhausted, independent claim, see Larocco v. Senkowski, 65 F. App'x 740, 743 (2d Cir. 2003) (summary order) ("The claim of ineffective assistance of counsel . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." (citing Murray, 477 U.S. at 488-89)); and (2) the claim must be meritorious, see Larrea v. Bennett, No. 01-CV-5813 (SAS) (AJP), 2002 WL 1173564, at *14 (S.D.N.Y. May 31, 2002) (report and recommendation), adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004). As discussed below, see infra Part III.C, Petitioner's ineffective assistance claim does appear to be properly exhausted. However, it is not proper grounds for cause, because it lacks merit. Accordingly, Plaintiff's claim of denial of counsel in connection with the mistrial hearing is procedurally barred.

### 3. Merits

Alternatively, even if there were grounds for the court to excuse Petitioner's procedural default, this claim would fail on the merits.[9] The Sixth and Fourteenth Amendments of the United States Constitution grant to criminal defendants in state court the right to counsel at all critical stages of a criminal prosecution. See Dallio v. Spitzer, 343 F.3d 553, 560 (2d Cir. 2003); United States v. Kon Yu-Leung, 910 F.2d 33, 37-38 (2d Cir. 1990). The trial, and all of its component parts, including motion hearings, constitute critical stages. See Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012) ("[The Sixth Amendment's] protections are not designed simply to protect the trial . . . ."). However, the Second Circuit has suggested that, like other constitutional rights, the right to counsel is not absolute, and can be forfeited by a defendant's misconduct. See

---

[9] Because this claim was never decided on the merits in a New York state court, this court would review it de novo.

15

Gilchrist v. O'Keefe, 260 F.3d 87, 92 (2d Cir. 2001) (Sotomayor, J.). Although the Supreme Court has never specifically considered a forfeiture of the right to counsel, the Court held in Illinois v. Allen, 397 U.S. 337 (1970), and Taylor v. United States, 414 U.S. 17 (1973) (per curiam), that a defendant can forfeit the right to be present at his own trial due to misconduct.[10] See Allen, 397 U.S. at 346 ("[T]he accused [cannot] be permitted by his disruptive conduct indefinitely to avoid being tried on charges brought against him."); Taylor, 414 U.S. at 20. The Second Circuit, applying AEDPA, has interpreted Allen and Taylor to apply with equal force to a defendant's forfeiture of the right to counsel, Gilchrist, 260 F.3d at 97, and other circuits have found that defendants who unreasonably refuse to cooperate with and/or abuse counsel have forfeited the right to counsel. See, e.g., United States v. Thompson, 335 F.3d 782, 785 (8th Cir. 2003); United States v. Leggett, 162 F.3d 237, 250 (3d Cir. 1998); United States v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995).

In Allen, the Supreme Court was tasked with determining whether a defendant's Sixth Amendment right to be present at his own trial is absolute. 397 U.S. at 338. At trial, the defendant had been verbally abusive toward the judge, and he continuously disrupted the proceedings with verbal outbursts. Id. at 339-41. The trial judge warned the defendant that he would be removed if he did not change his behavior, and then removed the defendant when his conduct did not change. Id. at 340. The Court concluded that the removal did not violate the defendant's Sixth Amendment right to be present at his trial, as a defendant can forfeit that constitutional right through particularly contumacious conduct. Id. at 345-46. The Court did note that the trial judge had warned the defendant before his removal; however, at no time does

---

[10] The cases distinguish between waiver and forfeiture of rights. "A waiver is an intentional and voluntary relinquishment of a known right." United States v. Leggett, 162 F.3d 237, 249 (3d Cir. 1998) (internal quotation marks and citations omitted). Forfeiture "does not require the knowing and intentional relinquishment of a known right." Id. at 250.

16

the majority opinion suggest that a warning is <u>necessary</u> before a defendant forfeits his right to

be present. <u>Id.</u> Indeed, three years later, in <u>Taylor</u>, the Court concluded that a defendant had

forfeited his right to be present at his own trial when he did not appear for the afternoon

session.[11] 414 U.S. at 20. Unlike in <u>Allen</u>, the trial court had never warned the defendant that

the trial would continue without him. <u>Taylor</u> can therefore be read as an expansion of the <u>Allen</u>

holding.

In <u>Gilchrist</u>, the Second Circuit drew on both <u>Allen</u> and <u>Taylor</u> to conclude that the right

to counsel, another Sixth Amendment right, can also be forfeited without warning. <u>Gilchrist</u>, 260

F.3d at 97. The court, which was reviewing the petitioner's conviction under AEDPA's

deferential standard of review, first determined that "there is no Supreme Court precedent

deciding the specific circumstances . . . under which a defendant may forfeit the right to

appointed counsel." <u>Id.</u> at 94. The court next concluded that <u>Allen</u> and <u>Taylor</u> "stand for the

proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-

related constitutional rights based on certain types of misconduct." <u>Id.</u> at 97. The Second

Circuit ultimately denied the petition because the petitioner's physical assault of his trial counsel

fell within the bounds of misconduct amounting to forfeiture. <u>Id.</u> The court acknowledged that

not all instances of misconduct amount to forfeiture:

> [T]he constitutional interests protected by the right to counsel
> prohibit a finding that a defendant forfeits that right based on a
> single incident, where there were no warnings that a loss of

---

[11] The Court did not expressly find that the defendant had <u>forfeited</u> his right. Instead, the Court construed the defendant's absence "as an effective waiver." <u>Taylor</u>, 414 U.S. at 19. However, an effective waiver functions as forfeiture, as both are premised on the idea that the defendant is unaware that he will lose a certain right. Therefore, <u>Taylor</u>'s use of the phrase "effective waiver" should be construed to mean forfeiture. The Third Circuit directly addressed the confusion regarding effective waivers and the similar idea of waiver by conduct in <u>United States v. Goldberg</u>, 67 F.3d 1092, 1099-1101 (3d Cir. 1995). The <u>Goldberg</u> court found the distinction between waiver by conduct and forfeiture to be false. <u>Id.</u> at 1100-01. The court concluded that a waiver by conduct is not actually a waiver because the defendants do "not affirmatively request[] to proceed pro se." <u>Id.</u> at 1101. Instead, the Third Circuit suggested the use of the term "forfeiture with knowledge" to refer to the loss of a right by conduct. <u>Id.</u> (internal quotation marks omitted).

counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel.

Id. at 89.

Pearson contends that he was constructively denied the right to counsel at the mistrial hearing when Dinnerstein entered a limited appearance. (Pet'r's Reply at 3-4.) He further argues that he was denied counsel because Dinnerstein did not tell Pearson that Dinnerstein planned to withdraw. (Id. at 7.) For the purposes of this analysis, the court will assume that Pearson was without counsel during the mistrial hearing, until the trial judge appointed Stella as Pearson's new defense attorney. As Pearson was not present at the mistrial hearing, and did not weigh in on Dinnerstein's request, he did not affirmatively waive the right to counsel (see id. at 2); accordingly, the question is whether Pearson forfeited that right through his conduct. The circumstances surrounding Pearson's claim—specifically, the severity of Pearson's conduct and the short period of time he was without counsel—are analogous to those of cases where defendants were found to have forfeited the right, and this court holds that Pearson did so as well.[12]

For example, in McLeod, the Eleventh Circuit held that the defendant had forfeited his right to counsel in connection with a motion for a new trial, when the defendant threatened to sue his attorney and urged his attorney to engage in unethical conduct. 53 F.3d at 324-26. In Leggett, the Third Circuit found that a defendant had forfeited his right to counsel in connection with a sentencing hearing when he punched his attorney, which the court characterized as "extremely serious misconduct." 162 F.3d at 250. Pearson's undisputed assault on Dinnerstein

---

[12] Pearson does not dispute his assault of Dinnerstein (see Pet'r's Am. Reply (Dkt. 27) at 2-3), and he acknowledges that certain misconduct can forfeit a defendant's right to counsel (see id. at 4).

and attempt to escape is at least as serious as that of the Leggett defendant, and certainly more severe than that of the McLeod defendant.

Indeed, courts have regularly found defendants to have forfeited the right to counsel for longer periods of time than that of Pearson's mistrial hearing, and for conduct roughly equivalent to, and in some instances less severe than, Pearson's. For instance, the defendant in Thompson was denied counsel throughout his entire direct appeal after he threatened to kill his attorney. Thompson, 335 F.3d at 784. Additionally, the district court in United States v. Jennings held that the defendant had "waived by implication" his right to counsel for the entirety of his trial after he punched his court-appointed attorney. 855 F. Supp. 1427, 1444 (M.D. Pa. 1994), aff'd, 61 F.3d 897 (3d Cir. 1995). Furthermore, one court in this district has held that a defendant forfeited his right to counsel for the entirety of his criminal trial when he repeatedly requested new counsel and verbally threatened numerous defense attorneys. Josey v. Poole, No. 07-CV-647 (ARR), 2009 WL 909599, at *3-4 (E.D.N.Y. Apr. 3, 2009). And this court has found that a defendant forfeited his right to counsel during a pre-sentencing hearing and the subsequent sentencing hearing after the defendant requested the removal of three court-appointed attorneys. Allen v. McGinnis, No. 05-CV-2699 (NGG), 2006 WL 1982871, at *8 (E.D.N.Y. July 13, 2006).

Assuming that Dinnerstein's limited appearance left Pearson unrepresented for the pendency of the mistrial hearing, Pearson was without counsel for that single hearing. Moreover, Pearson's physical assault on counsel with a deadly weapon amounts to most egregious conduct, and weighs more heavily toward a finding of forfeiture than would solely non-violent misconduct.[13] In sum, Pearson's conduct constituted forfeiture of the right to

---

[13] Notably, the trial judge was under no obligation to hold an evidentiary hearing as to whether Pearson's conduct constituted forfeiture because the escape attempt occurred in open court, and this court can rely on that judge's detailed descriptions of the conduct. See Leggett, 162 F.3d at 250 ("An evidentiary hearing was not necessary because [the defendant] assaulted [his attorney] in full view of the district court.").

counsel, as his conduct was egregious and he was only briefly without counsel; accordingly, his habeas claim lacks merit.

Notably, the above-mentioned Gilchrist exception is not applicable in this case. Central to the exception is the idea that the misconduct is not undertaken "to manipulate the court or delay proceedings . . . ." Gilchrist, 260 F.3d at 89. An escape attempt is certainly undertaken to delay proceedings. Indeed, an escape attempt is undertaken to end proceedings altogether.

## B.    Claim Two: Double Jeopardy

Pearson next contends that the trial court subjected him to double jeopardy in violation of the Fifth and Fourteenth Amendments because it improperly granted a mistrial. As Respondent acknowledges, this claim is properly exhausted, as it was raised on direct appeal, both to the Appellate Division and later to the New York Court of Appeals. (See Def. Appellate Br. at 29-37; Def. Appl. for Leave at 1-2; Resp't's Mem. in Opp'n to Pet ("Resp't's First Mem.") (Dkt. 12) at 1-2.) The claim is also not procedurally defaulted; it was reviewed by the Appellate Division on the merits. Accordingly, this court can review the claim on the merits. However, the claim fails on merits review because the Appellate Division's finding of manifest necessity was neither prohibited by nor a misapplication of the Supreme Court's precedents.[14]

---

[14] The Appellate Division also held, alternatively, that Pearson had impliedly consented to the mistrial. Pearson, 911 N.Y.S.2d at 432 ("On the codefendant's motion, to which the defendant did not object, the trial court declared a mistrial. Under the circumstances, the defendant's consent to a mistrial may be implied."). Respondent urges the court to deny the Petition on this basis as well. (Resp't's First Mem. at 17-18.) Ordinarily, this court would agree that Dinnerstein's failure to object to Pearson's codefendant's motion for a mistrial constituted implied consent, particularly where, as here, the prosecution argued against the mistrial (see Jan. 23, 2006, Hr'g (Mistrial) Tr. (Dkt. 12-1) at 232-36). See United States v. Dinitz, 424 U.S. 600, 607 (1976) ("[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." (quoting United States v. Jorn, 400 U.S. 470, 485 (1971))). The Supreme Court has never held that a defendant cannot consent to a mistrial impliedly, and has held that a criminal defendant can impliedly waive other Fifth Amendment protections. See Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) (holding that a defendant impliedly waives the right to remain silent by giving an uncoerced statement after being given a Miranda warning); Maness v. Meyers, 419 U.S. 449, 466 (1975); see also United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir. 1973) (holding that a defendant can impliedly consent to mistrial by failure to object), cert. denied, 414 U.S. 873 (1973). However, as Dinnerstein limited his appearance at the mistrial hearing, and as Pearson was not

20

1.    Procedural Default

Respondent contends that Pearson's double jeopardy claim is procedurally barred

because, he states, "the Appellate Division found [the] claim to be unpreserved and thus denied

[the] claim on procedural grounds, as well as on the merits." (Resp't's First Mem. at 2.)

However, a review of the Appellate Division's decision reveals that the Appellate Division did

not find that the claim was unpreserved, but rather denied the claim on the merits. See Pearson,

911 N.Y.S.2d at 433 ("Under the circumstances, the defendant's consent to a mistrial may be

implied. In any event, the record demonstrates that the trial court's decision to declare a mistrial

was supported by a manifest necessity and, thus, would have been proper even over the

defendant's objection." (internal citations omitted)). This was not an alternative holding; the

Appellate Division never stated that Pearson's double jeopardy claim was unpreserved or

otherwise procedurally barred from review. Accordingly, the court reviews the Appellate

Division's merits decision under AEDPA's deferential standard.

2.    Merits

Because the Appellate Division did reject Pearson's double jeopardy claim on the merits,

this court will grant the writ only if the Appellate Division's ruling was either: (1) contrary to

Supreme Court precedent; or (2) a misapplication thereof. 28 U.S.C. § 2254(d).

The Fifth Amendment of the United States Constitution, made applicable to state

proceedings through the Fourteenth Amendment, provides that no person "shall . . . be subject

for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The

Supreme Court has concluded that the Double Jeopardy Clause provides two separate

protections. First, the "constitutional prohibition against double jeopardy unequivocally

---

himself present at that hearing, this court is hesitant to hold that Pearson consented to a mistrial through
Dinnerstein's limited appearance. Notably, however, the court need not reach this question, as the Appellate
Division's determination that manifest necessity justified the mistrial holding is entitled to AEDPA deference.

prohibits a second trial following an acquittal." Arizona v. Washington, 434 U.S. 497, 503 (1978). Second, it grants a defendant the right, "as a general rule," "to have his trial completed by a particular tribunal." Id. (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)). Pearson's claim concerns the second protection.

It is a well-settled issue of constitutional law that a defendant may be prosecuted before a second jury after a mistrial has been granted due to manifest necessity. See United States v. Perez, 22 U.S. 579, 580 (1824). There is no bright-line rule to determine what circumstances constitute manifest necessity. Instead, the inquiry is necessarily fact intensive. See Illinois v. Sommerville, 410 U.S. 458, 462 (1973) ("[Manifest necessity] abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial."). "The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge . . . ." Renico v. Lett, 559 U.S. 766, 774 (2010) (quoting Sommerville, 410 U.S. at 462).

The Supreme Court has never held that a trial court may not find manifest necessity to declare a mistrial where a defendant assaults his attorney in plain view of the jurors; it has never addressed the issue. And the Court has consistently held that issues relating to juror bias constitute manifest necessity. See, e.g., Simmons v. United States, 142 U.S. 148, 154-55 (1891) (finding manifest necessity where a juror knew the defendant before the trial); Thompson v. United States, 155 U.S. 271, 273-74 (1894) (finding manifest necessity where a juror was on the grand jury that had indicted the defendant); see also United States v. Rahim, 339 F. App'x 19, 22 (2d Cir. 2009) (summary order) (finding that the district court did not abuse its discretion in declaring a mistrial in part because there was "potential juror bias and/or the appearance of juror

bias," and "[w]here the mistrial was based on potential juror bias, the degree of deference owing to the trial court is especially high").

The Supreme Court in Simmons found that a trial court acted properly when it declared a mistrial upon learning that a juror knew the defendant before the trial, and that defense counsel had alerted the local press to this fact. 142 U.S. at 149. Manifest necessity existed because it was "impossible for [the] jury . . . to act with the independence and freedom on the part of each juror requisite to a fair trial of the issue between the parties." Id. at 155. The Thompson Court concluded that dismissal of a jury in which one juror was a member of the grand jury fell squarely within the bounds of manifest necessity because the juror could have been privy to evidence not presented at trial. 155 U.S. at 274. Additionally, in Washington, the trial court dismissed the jury when defense counsel repeatedly made improper remarks, introducing inadmissible evidence—specifically, evidence of prosecutorial misconduct during a prior trial— during the opening statement. 434 U.S. at 501. The Supreme Court held that the trial judge had acted within his discretion when determining that defense counsel's actions biased the jury panel. Id. at 511-16. Taken together, these cases stand for the proposition that manifest necessity can be caused by conduct of the defense and that juror bias constitutes grounds for manifest necessity.

The instant case falls well within the bounds delineated by Washington, Thompson, and Simmons. The trial court found manifest necessity existed due to concerns of juror bias, stating: "It is the Court's opinion that this jury has been tainted by what they witnessed, what they heard on [the day of the attack]." (Jan. 23, 2006, Hr'g (Mistrial) Tr. at 236.) The trial court noted that even if some of the jurors had not witnessed the attack themselves, the media coverage of the event was so "tremendous" that the jurors inevitably would have heard of the attack. Id. And

according to the trial judge, many of the jurors had in fact been "held hostage" to the attack and "were unable to leave the courtroom at that particular time." (Feb. 6, 2006, Hr'g (T2B) Tr. at 3-4.) Some of the jurors "scream[ed]" as they exited or sought to exit the courtroom. (Id. at 3.) The trial judge, who witnessed the attack and the jury's reaction thereto, and was aware of the resulting publicity, was best situated to exercise his discretion to determine whether or not a mistrial was "necessary." See Washington, 434 U.S. at 509. The Appellate Division's ruling was not contrary to, or an unreasonable application of, Supreme Court precedent. Indeed, the Appellate Division's finding of manifest necessity is supported by Supreme Court case law. Accordingly, that ruling is deserving of AEDPA deference, and this court may not grant the writ on the basis of Pearson's double jeopardy claim.

## C.  Claim Three: Ineffective Assistance of Appellate Counsel

Pearson contends that he did not receive the effective assistance of appellate counsel because Ferguson, his appellate attorney, "did not independently raise a denial of counsel claim" on direct appeal. (Am. Pet. at 2.) This claim appears to be properly exhausted,[15] and it is not procedurally barred from review.[16] However, the claim fails on the merits, under AEDPA's deferential standard of review.

To succeed on the merits, Petitioner must show that: (1) appellate counsel's performance was deficient; and (2) Petitioner was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 688, 691-92 (1984); see also Smith v. Robbins, 528 U.S. 259, 285

---

[15] The claim was raised in Pearson's petition for coram nobis that was filed with the Appellate Division. (Pet. for Coram Nobis at 12-14.) After that petition was denied, Pearson, 911 N.Y.S.2d at 432, Petitioner then filed an application for leave to appeal to the New York Court of Appeals, which was subsequently also denied. See People v. Pearson, 988 N.E.2d 536 (N.Y. 2013). Respondent did not file Petitioner's application for leave to appeal in connection with this proceeding, and therefore the court cannot confirm that Petitioner also raised this claim therein; however, Respondent does not argue that Pearson failed to exhaust the claim, and suggests that Pearson did raise the claim. (See Resp't's Jan. 14, 2013, Resp. to Order to Show Cause (Dkt. 16); Resp't's Mem. in Opp'n to Am. Pet. (Dkt. 26) at 1-10.)

[16] The Appellate Division denied Pearson's coram nobis petition because Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." Pearson, 954 N.Y.S.2d at 465.

(2000) (extending the <u>Strickland</u> standard to ineffective assistance claims regarding a state petitioner's appellate counsel). Petitioner has failed to establish either that Ferguson's assistance was deficient or that any prejudice resulted from the omission of a denial of the right to counsel claim on direct appeal.

Counsel's performance is deficient if it falls "below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Whether representation falls below this standard is determined by considering "all the circumstances." <u>Id.</u> The court must judge counsel's conduct "on the facts of the particular case, viewed at the time of counsel's [challenged] conduct." <u>Id.</u> at 690. "Judicial scrutiny of counsel's performance must be highly deferential," as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 689-90. A court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) (internal quotation marks omitted). Essentially, counsel is effective if counsel's actions are "sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions." <u>Id.</u> at 688.

When assessing prejudice, the court must first determine whether the ineffective assistance claim is predicated on "state interference with counsel's assistance," an "actual conflict of interest," or "actual ineffectiveness." <u>See Strickland</u>, 466 U.S. at 692-93. The instant case falls under the third category, as Petitioner's claim is rooted in Ferguson's omission. Petitioner therefore "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Establishing an ineffective assistance claim is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington v. Richter, 562 U.S. 86, 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal citations and internal quotation marks omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

As to the objective standard of reasonableness, counsel has no "duty to raise every 'colorable' claim" on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). This standard, together with the Supreme Court's command to consider "all the circumstances," lead this court to find that it was not contrary to law, or unreasonable, for the state court to have found that Ferguson's representation of Pearson was not ineffective. Strickland, 466 U.S. at 688. This court has concluded that Pearson's claim that he was denied the right to counsel at a critical stage of his criminal proceeding is meritless. See supra Part III.A.3. At the time that Ferguson filed Petitioner's appellate brief, New York courts recognized that a defendant could forfeit his right to counsel through violent outbursts. See People v. Gilchrist, 658 N.Y.S.2d 269, 269-70 (App. Div. 1997) (mem.), leave denied, 690 N.E.2d 497 (N.Y. 1997). It was reasonable for Ferguson to decline to raise such a claim, as "[e]xperienced advocates . . . emphasize[] the

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52. Moreover, on direct appeal Ferguson raised five discrete issues, each of which were thoroughly argued and supported. (See generally Def. Appellate Br.) In doing so, Ferguson fulfilled his Sixth Amendment-prescribed role.

Pearson's claim further fails because there is no indication that the omission of this claim prejudiced Pearson. As the claim was meritless, Ferguson's omission does not undermine confidence in the outcome of his direct appeal; there is no reasonable probability that the Appellate Division would have reversed Pearson's conviction had Ferguson included the argument on direct appeal. Accordingly, the Appellate Division's rejection of Pearson's coram nobis petition was neither contrary to, nor an unreasonable application of, clearly established federal law as stated by the Supreme Court. This court must defer to that determination.

## IV.  SUPPLEMENTAL MOTIONS

On April 9, 2014, Pearson filed a motion to stay his Petition pending the decision of the New York State courts in a recently-filed Criminal Procedure Law § 440.10 motion to vacate judgment, in which Pearson argued that the state court had lacked jurisdiction to try his criminal case ("440 Motion"). (Mot. to Stay (Dkt. 29); see also May 5, 2014, Ltr. (Dkt. 31); 440 Mot. (Dkt. 31-1).) Subsequently, on October 30, 2014, Pearson informed this court that the state trial court had denied his 440 Motion, and that he was in the process of seeking leave to appeal that denial. (Oct. 30, 2014, Ltr. (Dkt. 32); see also Affirmation in Reply to People's Opp'n to 440 Mot. (Dkt. 32-1); Mot. for Leave to Appeal Denial of 440 Mot. (Dkt. 32-2); Decision & Order, People v. Pearson, Indictment Nos. 3668/2003 and 643-2006 (N.Y. Sup. Ct. Sept. 24, 2014) ("State Court Decision & Order on Jurisdiction") (Resp't's Ex. C in Opp'n to Mot. to Stay)

(Dkt. 34-1).) Respondent opposed Pearson's motion to stay, arguing that there was "no reasonable possibility that his application for leave to appeal the denial of his motion to vacate" would be granted, as the state trial court had properly ruled that Pearson's new claims were both procedurally barred and meritless. (Resp't's Mem. of Law in Opp'n to Mot. to Stay (Dkt. 34) at 1, 3-6.) On January 14, 2015, Pearson filed a motion to further amend his Petition seeking to add his jurisdictional claim, noting that the Appellate Division had denied leave to appeal the denial of his 440 Motion on December 31, 2014. (Mot. to Amend (Dkt. 35); see also Resp't's Opp'n to Mot. to Amend (Dkt. 36) at 2 (also noting that the Appellate Division denied leave on December 31, 2014).) Respondent opposes Pearson's motion to amend. (Resp't's Opp'n to Mot. to Amend.)

As a preliminary matter, Pearson's motion to stay is DENIED as moot; now that Pearson has apparently exhausted his jurisdictional claim in state court, there are no grounds for this court to stay the consideration of his Petition, and this court will proceed to consider his motion to amend in light of the exhaustion of that claim. Cf. Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (discussing when a district court may properly grant a stay of a mixed habeas petition in order for a petitioner to exhaust his unexhausted claims). However, even though Pearson's proposed amendment appears to be properly exhausted, Pearson's motion to amend is DENIED as untimely under AEDPA's one-year statute of limitations.[17]

---

[17] The motion is also denied as futile because Pearson's jurisdictional claim appears to be procedurally barred for failure to have been raised upon direct appeal (see State Court Decision & Order on Jurisdiction at 2 (citing N.Y. Crim. Proc. Law §§ 440.10(2)(c), 440.10(3)(a))), and in any event, it would fail on the merits. A New York State criminal court has jurisdiction over a person and his prosecution when that person has engaged in conduct constituting an element of the crime within the county in which that court presides. N.Y. Crim. Proc. Law §§ 20.20, 20.40. Pearson committed conduct constituting his crimes against Moore and Boyd in the basement of Hendrix's home, in Brooklyn, New York. (See, e.g., Trial Tr. at 2075-76.) Accordingly, the state trial court, sitting in Kings County, New York, had jurisdiction over Pearson for purposes of his prosecution for these crimes. Moreover, the various arguments raised by Pearson in support of his position—invoking admiralty jurisdiction, contending that his failure to willingly enter into any contract with the State of New York divested the court of jurisdiction, declaring

Absent exceptions not applicable here, AEDPA requires a petition for a writ of habeas corpus by a person in custody pursuant to a state court conviction to be filed by no later than one year after the petitioner's conviction becomes final. See 28 U.S.C. § 2244(d)(1). When a petitioner seeks "to amend his petition long after the one-year statute of limitations ha[s] run, he [is] required to show that his amended petition relates back in accordance with [Federal Rule of Civil Procedure] 15(c)." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2009). Rule 15(c) provides that an amended pleading relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c). In other words, if a new claim for habeas relief is "supported by facts that differ in both time and type from those the original pleading set forth," the amended petition does not relate back and is untimely. Mayle v. Felix, 545 U.S. 644, 650 (2005). A new untimely claim does not relate back to timely-filed claims merely because the new claim arose from "the same trial, conviction, or sentence" as the timely-filed claims. Id. at 662, 664. Additionally, "[t]he relation back doctrine has been narrowly construed in the context of federal habeas corpus petitions by courts in this circuit." Sookoo v. Heath, No. 09-CV-9820 (JGK), 2011 WL 6188729, at *5 (S.D.N.Y. Dec. 12, 2011).

Pearson moved to further amend his Petition long after AEDPA's one-year statute of limitations had run. Pearson's conviction became final and the statute began to run on September 28, 2011, which was 90 days after June 30, 2011, the date on which the New York Court of Appeals denied leave to appeal in connection with his direct appeal of the challenged conviction. See Barnes v. New York, No. 05-CV-3423 (NGG), 2005 WL 1984462, at *1 (E.D.N.Y. Aug. 17, 2005) (citing Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001));

his own sovereignty, and speculating that the trial court, prosecutor, and his court-appointed counsel signed and sold a criminal bond against Pearson—are clearly lacking in merit.

People v. Pearson, 952 N.E.2d 1102 (N.Y. 2011). The 285 days between May 30, 2012 (the date Pearson filed his petition for a state writ of error coram nobis), and March 11, 2013 (the date the New York Court of Appeals denied leave to appeal the denial of that application), were tolled. See 28 U.S.C. § 2244(d)(2); Smith v. McGinnis, 208 F.3d 13, 15-17 (2d Cir. 2000). Accordingly, AEDPA's one-year statute of limitations expired on or about July 10, 2013. Pearson's Petition, which was filed on July 2, 2012, was timely, as were his earlier motions to amend (see Dkts. 14, 18, 20); however, the instant motion to further amend, which was filed on January 14, 2015, was not.[18]

Therefore, this court may consider Pearson's proposed new claim only if it "relates back" to the claims set forth in his original Petition. Pearson's proposed further amendment does not meet this standard. Pearson's original Petition, as discussed above, raised two claims, both of which focused on the mistrial and facts related thereto: (1) he was denied the right to counsel at the mistrial hearing; and (2) his conviction was obtained by placing him in double jeopardy, because the trial court improperly granted the motion for a mistrial. Pearson's third claim, asserted in his Amended Petition filed on consent of Respondent and with leave of this court, also related to the mistrial, as Pearson argued that (3) his direct appellate counsel was ineffective for failing to raise the double jeopardy claim.

Pearson's proposed new claim, however, contends that the New York State trial court lacked jurisdiction to adjudicate his prosecution. It has no relation to his escape attempt, the mistrial hearing, the judge's decision to grant a mistrial, or his representation by counsel either at trial or on appeal. Accordingly, Pearson's jurisdictional claim is "supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. It

---

[18] Even if the court were to liberally construe Pearson's motion to stay as providing notice of his motion to amend, and providing the relevant date for statute-of-limitations purposes, that motion, filed April 9, 2014, would also be untimely, as the statute of limitations expired on or about July 10, 2013.

does not arise out of the same "conduct, transaction, or occurrence" as his prior claims, which all related in some manner to the mistrial, Fed. R. Civ. P. 15(c); the proposed further amended petition does not relate back and therefore, it is untimely.

## V.    CONCLUSION

For the reasons set forth above, Pearson's motion to stay (Dkt. 29) is DENIED, his motion to further amend (Dkt. 35) is DENIED, and his Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED. Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 445-45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 24, 2015

NICHOLAS G. GARAUFIS
United States District Judge